NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0012n.06

No. 12-5661

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jan 04, 2013*

DEBORAH S. HUNT, Clerk

MARSHA LILLY,                                          )
                                                       )
      Plaintiff-Appellant,                              )    ON APPEAL FROM THE
                                                       )    UNITED STATES DISTRICT
v.                                                     )    COURT FOR THE MIDDLE
                                                       )    DISTRICT OF TENNESSEE
                                                       )
CITY OF CLARKSVILLE, TENNESSEE; AL                     )    O P I N I O N
ANSLEY, Chief of Police for the City of                )
Clarksville, Tennessee; PHIL ASHBY, Police             )
Officer of the City of Clarksville, Tennessee,         )
                                                       )
      Defendants-Appellees.                             )
                                                       )

BEFORE: CLAY, GILMAN, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant Phil Ashby, a Clarksville Police Officer, stated that he would not share confidential information with Plaintiff's employer while Plaintiff was employed there because, during the execution of a search warrant, the police had found several documents that linked plaintiff to a drug dealer. Plaintiff brought suit against, *inter alia*, the City of Clarksville, and pleaded, *inter alia*, a municipal-liability race discrimination claim. The district court granted summary judgment in favor of defendants on all counts. Plaintiff appeals the dismissal of her municipal-liability race discrimination claim. We **AFFIRM**.

BACKGROUND

Plaintiff-appellant, Marsha Lilly, owned 808 Sports Bar & Grille ("Club 808") in Clarksville, Tennessee. Prior to the opening of the club but after Lilly had signed the lease, a known drug dealer

was arrested on "a sealed indictment for narcotics violations" after he left Club 808. R. 21-24, Ansley Affid. ¶ 12, Page ID# 320. After the arrest, a search warrant was executed at the drug dealer's residence. During the execution of the warrant, police found a copy of the Club 808 lease; a copy of plaintiff's cashier's check for the lease's security deposit; and a document from First Choice Moving and Storage signed by the drug dealer and relating to the rental, lease, and purchase of equipment provided to Club 808. R. 40-11, Lilly Dep. at 216-17, Page ID# 1264-65.

In August 2009, plaintiff accepted a job as a civilian criminal investigative supervisor with the Army at Fort Campbell Criminal Investigation Division ("CID"). Around November 2009, a Tennessee Bureau of Investigation agent informed a Clarksville Police Officer, Agent Pace, that plaintiff had been hired by Fort Campbell CID. R. 21-25, Pace Dep. at 13, Page ID# 363. Pace informed the Tennessee Bureau of Investigation agent of the documents that were found during the execution of the search warrant. Pace stated that he found the drug dealer's possession of the documents "suspicious." *Id.* at 18, Page ID# 366. The Tennessee Bureau of Investigation agent told Pace that she intended to inform Fort Cambell CID of the information disclosed by Pace. *Id.* at 20, Page ID# 367. On the same evening, Pace received a call from a Fort Campbell CID agent asking about plaintiff's connection to the drug dealer. Pace told the agent the same information that he had told the Tennessee Bureau of Investigation agent. *Id.*

In December 2009, Fort Campbell CID sent two agents to obtain copies of the documents discovered during the execution of the search warrant. When the Fort Campbell agents arrived, they met with Pace and Agent Hamilton, the affiant on the search warrant of the drug dealer's residence. During the meeting, Ashby joined the group and stated that he would not share any confidential case

information with Fort Campbell CID while plaintiff was employed there because of her connection to the drug dealer. *Id.* at 27, Page ID# 372. Plaintiff was ultimately terminated from her position at Fort Campbell.

Prior to this meeting, Lilly was investigated by the Tennessee Department of Insurance regarding the licensing of the security company that serviced Club 808. Lilly believed the investigation was initiated by Detective Finley of the Clarksville Police Department. Plaintiff complained to Ashby regarding an alleged letter that she believed had been written by Finley. Ashby said he would investigate it and get back to her. After speaking with Finley, Ashby determined the complaint was meritless and did not investigate the claim further, contact plaintiff, or write a report.

After her termination from Fort Campbell CID, plaintiff brought suit against Ashby, Chief Al Ansley of the Clarksville Police Department, and the City of Clarksville. In her complaint, she alleged federal constitutional and state-law claims, including a claim that the City was liable for depriving her of the equal protection of the law under the Fourteenth Amendment.

The City filed a motion for summary judgment in February 2012, as did Ashby and Ansley in a separate motion. Plaintiff responded and conceded many of her claims against Defendants. The district court ultimately granted summary judgment in favor of Defendants on all claims. Plaintiff appeals this decision, but limits her argument to the contention that the district court erred when it granted summary judgment on her municipal-liability race discrimination claim.

## STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo. Coble v. City of White House*, 634 F.3d 865, 868 (6th Cir. 2011). Summary judgment is appropriate where there is no

genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Coble*, 634 F.3d at 868.

## ANALYSIS

To prevail on her § 1983 claim for racial discrimination,[1] plaintiff must prove (1) defendants acted under state law, and (2) she suffered a deprivation of a constitutional right as a result of that action. *Thomas v. City of Chattanooga*, 396 F.3d 426, 429 (6th Cir. 2005). Plaintiff argues that the City itself is liable, requiring her to establish municipal liability. To establish municipal liability, the plaintiff must prove (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the alleged constitutional deprivation. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiff spends the entirety of her brief arguing about whether the municipality may be held liable but never indicates the basis for claiming that she was deprived of a constitutional right. We construe her claim as one for racial discrimination in violation of the equal protection clause, which requires that she prove that a state actor purposefully discriminated against her on the basis of her race. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977);

---

[1]Plaintiff brought a number of claims in the district court. However, all of Plaintiff's arguments to this court relate to her § 1983 racial discrimination claim against the City itself. To the extent that Plaintiff may be attempting to appeal any other claims, she has failed to address those claims in her brief. Therefore, we need consider only the § 1983 municipal-liability race discrimination claim because all of Plaintiff's other claims were waived. *Ewolski v. City of Brunswick*, 287 F.3d 492, 516-17 (6th Cir. 2002); *Ahlers v. Schebil*, 188 F.3d 365, 374 (6th Cir. 1999).

No. 12-5661
*Lilly v. City of Clarksville, et al.*

*Washington v. Davis*, 426 U.S. 229, 239 (1976). She argues that Ashby's statement to the Fort Campbell CID agents was motivated by a racially discriminatory intent or purpose and that the statement led to her termination at Fort Campbell CID. Beyond relying on the statement itself, she relies on prior employment discrimination cases brought against the city between 2002 and 2006,[2] depositions (presumably from those cases),[3] and Ashby's failure to fully investigate the alleged letter written by Finley.

The evidence provided by plaintiff would not support a jury finding that Ashby's statement to Fort Campbell CID agents was motivated by a racially discriminatory intent or purpose.[4] Nothing in Ashby's statement indicates that he was motivated by a racially discriminatory intent or purpose. Plaintiff's only evidence of alleged racial discrimination by Clarksville Police Officers appears to have occurred prior to 2006. It is unclear to us how this past conduct establishes that Ashby's statement in 2009 was motivated by a racially discriminatory intent or purpose. And Ashby's failure to fully investigate Finley's alleged letter does not support a finding of racially discriminatory intent

---

[2]These appear to have been employment discrimination cases alleging a failure to promote on the basis of race and appear to have been brought by police officers.

[3]It is unclear when most of these depositions were taken. A number of them indicate that they were taken in October 2003. The depositions do not appear to be in the record.

[4]Plaintiff claims Ashby's statement was defamatory. A statement of opinion will not constitute defamation unless a statement implies an allegation of "undisclosed defamatory facts as the basis of the opinion." *Orr v. Argus-Press Co.*, 586 F.2d 1108, 1114 (6th Cir. 1978). The facts underlying Ashby's decision to not share confidential information with Fort Campbell CID were all true and were disclosed, as were the facts underlying the opinion that plaintiff's relationship to a drug dealer was suspicious. Thus, the statements were not defamatory. 99 Am. Jur. 3d *Proof of Facts* § 393.

or purpose.[5]  Thus, she has failed to show the requisite discriminatory intent or purpose, and her

claim therefore fails as a matter of law.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court.

---

[5]Plaintiff also cites to her deposition where she mentioned an alleged statement by an unknown club owner, who stated that an unknown police officer called her business a "gang banger club."  R. 40-11, Pl. Dep. at 64-65, Page ID# 1245-46.  She also refers to another person who supposedly read a report from the police department that said her club was a "gang banger club."  *Id.* at 111-12, Page ID# 1251-52.  Both of these statements constitute hearsay, which courts may not consider at the summary judgment stage.  *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).  However, even if we considered this evidence, it would not indicate that Ashby's statement was motivated by a racially discriminatory intent or purpose.